BISHOP *v.* STATE.

(In Banc. Nov. 13, 1944. Suggestion of Error Overruled Dec. 11, 1944.)

[19 So. (2d) 693. No. 35622.]

**W. T. Weir,** of Philadelphia, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, for appellee.

**McGehee, J.,** delivered the opinion of the court.

Curtis Bishop appeals from a conviction of manslaughter for the slaying of Tom Stewart in Neshoba County. A reversal of the case is sought primarily on the ground that the trial court permitted a ten-year-old boy, who is a nephew of the accused, to testify on behalf of the state

as an eye-witness to the homicide, the alleged error assigned being that the witness was too young to understand the nature and purport of an oath, or to correctly recall and communicate the events about which he was undertaking to testify.

However, the version given by the little boy as to the facts and circumstances of the killing was altogether reasonable, entirely consistent with all the physical facts, and was in accord with the testimony offered on behalf of the accused, except that he disagreed with the story related by the accused, and by Earl and Davis Bishop, the boy's uncle and father, respectively, wherein they claimed that Stewart was advancing on the accused with a knife and a shotgun, the hammer of which gun was drawn back, at the time Stewart was struck with a "bed-slat" and killed. Moreover, the jury was warranted in believing the story told by the boy, since there was no knife found at the scene of the difficulty, and the knife of Stewart was produced at his home, and there was testimony to the effect that while his shotgun was at the home of Earl Bishop, where the homicide occurred, the same had been hidden, prior to the difficulty, by the wife of one of the Bishop brothers, due to the fact that the Bishops and Stewart were then all under the influence of intoxicating liquor. Also, the jury was entitled to adopt this view in preference to the story of the defence that Stewart was advancing on the accused with a loaded shotgun, with the hammer drawn, and that being so situated, he permitted the latter to slay him in the manner claimed by the defense, and especially in view of the fact that the original version given by the accused to those investigating the tragedy did not involve any reference to a shotgun.

As to whether the boy possessed sufficient capacity to observe and to correctly relate what he claimed to have seen and heard at the scene of the killing, the record clearly discloses that he realized that he was under the duty to tell the truth, and that he possessed sufficient

intelligence to correctly communicate his knowledge to the jury. He stated that he would be afraid to testify falsely in court, and that he knew it was wrong to do so. His testimony shows that he was able to understand the questions asked him, and to frame intelligent answers thereto, even though he was unable, on cross-examination, to define an oath, or to explain what is truth. One witness may not be able to give a technical or satisfactory definition of what is meant by an "oath" taken in court, or to explain what is "truth"; and yet he may be so impressed both with the solemnity of the oath he takes and with the high regard that should be entertained for the truth, that he feels under a conscious duty to speak it; while another witness may possess that intelligence which may enable him to clearly define the nature and character of an oath, and to explain what is meant by "truth," and at the same time have no regard for either.

This little boy assured the trial judge that he understood his oath to mean that he was promising "to tell the truth, and not tell any stories." Then, the fact that his testimony was in conflict with that of his father, and that given by his two uncles, was doubtless persuasive with the court and the jury in producing the belief that he had not testified to what others had told him to say, nor shown a want of any sense of moral responsibility or consciousness of duty to speak the truth. Therefore, the case is unlike that of King v. State (Miss.), 168 So. 660.

We are of the opinion that the witness was competent to testify; that his testimony, if not alone sufficient to sustain the judgment appealed from, is such as to warrant a jury in accepting it as true, and especially when it is considered in connection with the other facts and circumstances disclosed by the record. Nor do we find such merit in any of the other assignments of error as would justify a reversal of the case.

Affirmed.